OPINION
{¶ 1} Appellants, The Estate of Richard Miller, et al., ("appellants") appeal the decision of the Stark County Court of Common Pleas that determined they were not entitled to binding arbitration as it relates to Universal Underwriters Insurance Company's ("Universal") umbrella policy. Appellants also appeal the trial court's decision as it pertains to Cincinnati Insurance Company ("Cincinnati"). Appellants claim the trial court erred when it determined the other-owned auto exclusion applied preventing UIM coverage under Cincinnati's business auto policy and erred when it determined they are not insureds for UIM purposes under Cincinnati's umbrella policy.
 {¶ 2} Cincinnati filed a cross-appeal in which it alleges the trial court erred when it determined a UM endorsement issued on December 5, 1999, was not effective. Cincinnati also claims the trial court erred when it determined the rejection of UM/UIM coverage fails to satisfy the requirements set forth in Linko v. Indemn. Ins. Co., 90 Ohio St.3d 445,2000-Ohio-92. Universal also filed a cross-appeal. Universal maintains the trial court erred when it determined Cincinnati owes no UIM coverage. Universal also claims the trial court erred when it concluded Cincinnati did not owe coverage on a pro rata basis. The following facts give rise to this appeal.
 {¶ 3} On January 5, 2000, Richard Miller was involved in a motor vehicle accident caused by the negligence of Lorenz Hanich when Hanich violated a stop sign and struck the vehicle Miller was operating. Miller died as a result of the injuries he sustained in the accident. When the accident occurred, Miller was working for his employer, Wade's Foreign Auto Parts ("Wade's"), and was driving a 1993 Toyota pickup owned by Wade's and provided to Miller for the delivery of auto parts. The following policies were in effect on the date of the accident.
 {¶ 4} First, Wade's was a named insured on a business auto policy and umbrella policy issued by Universal. The Universal auto policy provided $500,000 in UM/UIM coverage. Universal's umbrella policy provided $1,000,000 in excess coverage. The 1993 Toyota pickup was a covered auto under the Universal policies. The second policy, in effect on the date of the accident, was a policy issued by Motorists Mutual Insurance Company ("Motorists") to the tortfeasor, Hanich. This policy provided liability coverage in the amount of $25,000 per person and $50,000 per accident. The third policy in effect was a business auto policy and umbrella policy issued by Cincinnati to Suarez Corporation, Inc. ("Suarez"), the employer of Miller's step-son, Lonnie Milliken. Finally, Miller had a personal automobile liability policy issued by State Farm, with UIM limits of $50,000 per person and $100,000 per accident.
 {¶ 5} Sandra Miller, the surviving spouse and Administrator of the Estate of Richard Miller, presented a liability claim to the tortfeasor's carrier, Motorists. Motorists offered the $25,000 per person limit. Appellant Sandra Miller notified Universal of the offer and invited it to consent to the settlement or advance the $25,000. Universal chose to advance the $25,000, to Sandra Miller, so as to preserve its subrogation rights against the tortfeasor.
 {¶ 6} Thereafter, on February 26, 2001, Universal filed a declaratory judgment action joining the Estate of Richard Miller, Cincinnati and State Farm as party-defendants. Universal's declaratory judgment action requested the trial court to declare whether the policies of insurance issued by Universal, Cincinnati and State Farm provided UIM coverage to Miller and his estate. On April 11, 2001, appellants filed a counterclaim and cross-claim.
 {¶ 7} In their counterclaim, appellants requested the following relief: (1) the trial court declare the decedent is an insured for UIM purposes under Universal's auto liability and excess policies and that the beneficiaries are entitled to receive UIM benefits; (2) the trial court declare that Universal's UIM coverage is in the amount of $500,000 in the auto liability policy and in the amount of $1,000,000 in the umbrella policy; (3) the trial court declare the beneficiaries of the decedent's estate be entitled to binding arbitration pursuant to the policies issued to Wade's; and (4) the trial court order prejudgment interest and reasonable attorney fees.
 {¶ 8} Universal filed a cross-claim against Cincinnati. Universal requested the following relief in its cross-claim: (1) the trial court declare the decedent is an insured for UIM purposes under Cincinnati's policies of insurance issued to Suarez and that the beneficiaries of the decedent's estate be entitled to receive UIM benefits; (2) the trial court declare that Universal is entitled to binding arbitration pursuant to the language of Cincinnati's policies; (3) the trial court order prejudgment interest and reasonable attorney fees.
 {¶ 9} Subsequently, appellants and Universal filed cross-motions for summary judgment. On April 19, 2002, the trial court issued a judgment entry finding the decedent's estate was entitled to receive UIM benefits under Universal's business auto policy and umbrella policy; that Universal is entitled to set off $25,000, the limit of the tortfeasor's coverage provided by Motorists; that Universal's business auto policy provides primary coverage and its umbrella policy provides excess coverage; that the applicable policy limit for the Universal business auto policy is $500,000 and the applicable policy limit for the umbrella policy is $1,000,000; and that binding arbitration is required under the business auto policy but not under the umbrella policy.
 {¶ 10} On June 6, 2002, the trial court issued a judgment entry ruling on cross-motions for summary judgment filed by appellants and Cincinnati. In this judgment entry, the trial court determined the December 5, 1998 endorsement, which was in effect at the time of the policy's inception, controls; that coverage is provided to employees of Suarez and their family members unless otherwise excluded by the policy; that the other-owned auto exclusion excludes coverage of the claims of the decedent's estate; and that there has been no valid rejection of UM/UIM coverage and that such coverage is provided, as a matter of law, in an amount of coverage equivalent to the liability coverage to insureds under the umbrella policy; and that Lonnie Milliken is an insured under the umbrella policy but the estate of the decedent is not.
 {¶ 11} Appellants timely appealed both judgment entries. Cincinnati and Universal filed cross-appeals. The parties present the following assignments of error for our consideration:
"Appellants' Assignments of Error"
 {¶ 12} "I. The trial court erred in ruling that appellant was not entitled to binding arbitration as it relates to appellee Universal Underwriter's Insurance Company's Excess Policy.
 {¶ 13} "II. The trial court erred in sustaining appellee Cincinnati Insurance Company's motion for summary judgment and in denying appellant's motion for summary judgment as it relates to the issue of underinsured motorist coverage."
"Cincinnati's Cross-Assignments of Error"
 {¶ 14} "I. The trial court erred in determining that the 12/5/99 um endorsement was not effective.
 {¶ 15} "II. The trial court erred in determining that the rejection in this case fails to satisfy the requirements of Linkov. Indemnity Ins. Co. (2002), 90 Ohio St.3d 445."
"Universal's Cross-Assignments of Error"
 {¶ 16} "I. The trial court erred in sustaining appellee Cincinnati Insurance Company's motion for summary judgment and in declaring that Cincinnati owes no underinsured motorist coverage.
 {¶ 17} "II. The trial court erred by denying universal underwriter's motion for summary judgment insofar as universal underwriters requested the court to declare that Cincinnati Insurance owed coverage on a pro-rata basis."
"Summary Judgment Standard"
 {¶ 18} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 19} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 20} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. It is based upon this standard that we review appellants' assignments of error and Cincinnati and Universal's cross-assignments of error.
"Appellants' Assignments of Error"
 {¶ 21} In their First Assignment of Error, appellants maintain the trial court erred when it determined they were not entitled to binding arbitration under Universal's excess policy. We disagree.
 {¶ 22} In its judgment entry, the trial court concluded that since UIM coverage, under the excess policy, is provided by operation of law, Universal is not bound to arbitration with respect to said policy. In support of this conclusion, the trial court cites our decision in Hopkinsv. Dyer, Tuscarawas App. Nos. 2001AP080087, 2001AP080088, 2002-Ohio-1576
and the Ohio Supreme Court's decision in Scott-Pontzer v. Liberty Mut.Fire Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-292.
 {¶ 23} Appellants claim the trial court's ruling invites inconsistent results, judicial waste and unnecessary expense because it requires appellants to litigate the same issue of damages in two different forums. The first forum being binding arbitration, with respect to the business auto policy, and the second forum, a judge or jury, with respect to the umbrella policy. Appellants also maintain the admission by Universal that decedent, a paid employee of Wade's, is a UIM insured under the umbrella policy and the fact that the umbrella policy is excess coverage over and above the underlying auto policy, is a sufficient basis for permitting the resolution of the entire UIM claim, on the issue of total damages, through binding arbitration.
 {¶ 24} In support of their argument, appellants rely upon the Ohio Supreme Court's decision in Gerig v. Kahn, 95 Ohio St.3d 478,2002-Ohio-2581, wherein the Court held that a signatory to a contract may enforce an arbitration provision against a nonsignatory who seeks any benefits under the contract. In reaching this conclusion, the Court explained:
 {¶ 25} "* * * [W]e find that it would be inequitable to allow an interested nonsignatory to determine the forum in which an agreement is to be interpreted when the signatories previously agreed in writing to arbitrate any controversy relating to the agreement. Accordingly, we hold that a signatory to a contract may enforce an arbitration provision against a nonsignatory seeking a declaration of the signatories' rights and obligations under the contract. Our holding is in keeping with this court's long history of favoring and encouraging arbitration. [Citations omitted.] Moreover, it is consistent with Ohio's Arbitration Act, codified in R.C. Chapter 2711, which embodies the public policy of supporting arbitration." Id. at 482.
 {¶ 26} Universal responds the trial court correctly determined appellants are not entitled to arbitration under its umbrella policy. The umbrella policy contains no arbitration clause and there is no basis for imposing such an arbitration clause, into the policy, by operation of law. However, Universal does concede that its business auto policy contains an arbitration clause, which is a distinct policy from the umbrella policy. Universal also maintains the Gerig decision does not apply to the facts of the case sub judice because the limited exception recognized by the Ohio Supreme Court applies to contracts that actually contain an arbitration clause.
 {¶ 27} Universal cites our decision in Greene v. Westfield Ins.Co., Stark App. No. 2002CA00114, 2002-Ohio-6179. In Greene, we determined the trial court erred when it ordered the suit to binding arbitration through Westfield's underlying policy because coverage arose by operation of law and therefore, the policy provisions are not imposed upon such coverage. Id. at ¶ 28, ¶ 29.
 {¶ 28} We conclude the trial court properly determined that appellants are not entitled to binding arbitration under Universal's umbrella policy. Appellants explained, in their brief, that if the underlying business auto policy is exhausted through an arbitration award, the excess coverage would be entitled to pay over and above the auto policy's $500,000 limit. Therefore, once damages are established, at the arbitration for the underlying business auto policy, there is no need to again determine damages for purposes of the umbrella policy. As appellants explained, they are entitled to damages, under the umbrella policy, to the extent their damages exceed the policy limits of the business auto policy. Judicial economy will be served through arbitration of the underlying business auto policy.
 {¶ 29} Further, pursuant to our decisions in Hopkins and the Ohio Supreme Court's decision, in Scott-Pontzer, we will not impose an arbitration provision contained in the underlying business auto policy to the terms of the umbrella policy since UIM coverage, under the umbrella policy, arose by operation of law. Further, unlike the Scott-Pontzer
decision where the restriction sought to be enforced, the scope of employment language, was actually contained in the umbrella policy, the umbrella policy sub judice does not contain an arbitration provision. Only the underlying business auto policy contains an arbitration provision.
 {¶ 30} In Scott-Pontzer, the Supreme Court refused to impose the scope of employment restriction contained in the umbrella policy because UM/UIM coverage arose by operation of law and therefore, the restrictive language only applied to excess liability coverage and not excess UM/UIM coverage imposed by law. Scott-Pontzer, supra, at 666. Pursuant to this same reasoning, we likewise refuse to impose an arbitration provision, to the terms of the umbrella policy, when the arbitration provision sought to be enforced is not contained in the umbrella policy, but instead contained in the underlying business auto policy.
 {¶ 31} We also conclude the Gerig case is not applicable. Gerig
addressed a contract that contained an arbitration provision and whether a signatory to a contract may enforce an arbitration provision against a nonsignatory. In the matter currently under consideration, the excess policy does not contain an arbitration provision. Accordingly, the trial court did not err when it denied appellants' request for arbitration as it pertains to Universal's excess policy.
 {¶ 32} Appellants' First Assignment of Error is overruled.
 II
"A. Other Owned Auto Exclusion"
 {¶ 33} In their Second Assignment of Error, appellants maintain the trial court erred when it determined the other-owned auto exclusion in Cincinnati's business auto policy excluded the decedent and his estate from UIM coverage. We disagree.
 {¶ 34} At the time of the accident, the decedent resided with his step-son, Lonnie Milliken. Milliken was employed by Suarez. Cincinnati insured Suarez under a business auto policy with UIM limits of $500,000 and an umbrella policy with liability limits of $5,000,000. The policy period was December 5, 1998 through December 5, 2001, and therefore, the policy must be interpreted according to the H.B. 261 version of R.C.3937.18.
 {¶ 35} Under the H.B. 261 version of R.C. 3937.18, the General Assembly enacted Section (J)(1), which permits insurers to include other-owned auto exclusions in UIM policies. The other-owned auto exclusion provides that:
 {¶ 36} "* * * UM/UIM coverage may include terms and conditions that preclude coverage of bodily injury suffered by an insured when the insured is operating or occupying a motor vehicle owned, furnished to, or available for the regular use of the named insured, a spouse, or a resident relative if the motor vehicle is not specifically identified in the policy under which the claim is made, or not is (sic) a newly acquired or replacement vehicle for a motor vehicle covered under the terms of the policy." Miller v. Grange Mut. Cas. Co., Stark App. No. 2002CA00058, 2002-Ohio-5763, at ¶ 12.
 {¶ 37} Pursuant to this exclusion, the trial court determined that under Scott-Pontzer, Lonnie Milliken is deemed a named insured and the decedent is treated as an insured, as a family member of a named insured. Therefore, because the decedent was operating a motor vehicle furnished to himself and the decedent is a resident relative of Lonnie Milliken, the other-owned auto exclusion applied to preclude coverage for the decedent. Judgment Entry, June 6, 2002, at 4.
 {¶ 38} Appellants claim the trial court failed to recognize a distinction between one who is an "insured" and one who is a "named insured." Appellants maintain R.C. 3937.18(J) specifically limits the other-owned auto exclusion to bodily injury or death suffered by an insured. Thus, appellants conclude the policy exclusion in Cincinnati's policy cannot legally exclude coverage for an insured operating a vehicle not owned by a named insured and it is undisputed that Wade's, not Suarez, owned and furnished the vehicle the decedent was driving at the time of the accident.
 {¶ 39} Appellants also note the General Assembly enacted R.C.3937.18(J) in response to the Ohio Supreme Court's decision in Martin v.Midwestern Grp. Ins. Co.(1994), 70 Ohio St.3d 478, in which the Supreme Court prohibited insurers from enforcing other-owned auto exclusions as to any and all insured persons. Appellants maintain the General Assembly only intended to supersede the Supreme Court's decision, in Martin, to the extent of permitting the exclusion of vehicles owned by a named insured and the decedent does not fall within that category.
 {¶ 40} According to appellants, Cincinnati's other-owned auto exclusion reads as follows:
 {¶ 41} "This insurance does not apply to:
 {¶ 42} " `Bodily injury' sustained by an insured (the decedent) while the insured (the decedent) is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured (Suarez Corporation), a spouse, or a resident relative of a named insured (Suarez Corporation), if the motor vehicle is not specifically identified in the policy under which a claim is made * * *."
 {¶ 43} Appellants maintain it is clear the other-owned auto exclusion does not apply to the facts of this case because the decedent was operating and occupying a motor vehicle owned by Wade's and not Suarez Corporation.
 {¶ 44} In response, Cincinnati argues the trial court correctly determined, pursuant to Scott-Pontzer, that the term "you" referred to the named insured, which included Lonnie Milliken, an employee of Suarez. The trial court also determined, pursuant to the Ohio Supreme Court's decision in Ezawa v. Yasuda Fire and Marine Ins. Co.,86 Ohio St.3d 557, 1999-Ohio-124, that insured status was also conferred upon the decedent, as a family member of Lonnie Milliken.
 {¶ 45} Cincinnati also maintains that under the Scott-Pontzer
analysis, references to the named insured include Suarez as well as its employee, Lonnie Milliken, "* * * since a corporation cannot "* * * occupy an automobile, suffer bodily injury or death, or operate a motor vehicle[;] * * * naming the corporation as the insured is meaningless unless the coverage extends to some person or persons — including the corporation's employees." Scott-Pontzer, supra, at 664.
 {¶ 46} In the Miller case, we recently addressed the issue of whether R.C. 3937.18(J)(1) authorizes the other-owned auto exclusion with respect to only those vehicles owned by the named insured, and not vehicles owned by an additional insured arising from the law articulated in Scott-Pontzer. Relying upon our previous decision in United OhioCompany v. Bird, (May 18, 2001), Delaware App. No. 00CA31[1], we concluded "Scott-Pontzer's logic requires us to find the `you' here includes both the corporation and its employees." Id. at ¶ 21.
 {¶ 47} In applying the Miller analysis to the case sub judice, we conclude the trial court did not err when it determined the other-owned auto exclusion in Cincinnati's policy precluded UIM coverage for the decedent. The "named insured" includes both Suarez Corporation and its employees. Under this conclusion, the other-owned auto exclusion reads as follows:
 {¶ 48} "This insurance does not apply to:
 {¶ 49} " `Bodily injury' sustained by an insured (decedent) while the insured (decedent) is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured (Lonnie Milliken), a spouse, or a resident relative of a named insured (Lonnie Milliken), if the motor vehicle is not specifically identified in the policy under which a claim is made * * *."
 {¶ 50} Accordingly, the other-owned auto exclusion contained in Cincinnati's business auto policy precludes coverage in favor of the decedent and his estate.
"B. UIM Coverage Under Cincinnati's Umbrella Policy"
 {¶ 51} Appellants contend the trial court erred when it concluded the decedent and his estate were not insureds for UIM purposes under Cincinnati's umbrella policy. We disagree.
 {¶ 52} In its judgment entry, the trial court found there was not a valid and enforceable rejection of UM/UIM coverage under Cincinnati's umbrella policy and therefore, such coverage arose by operation of law. Judgment Entry, June 6, 2002, at 5. The trial court then determined that the decedent and his estate are not insureds under Cincinnati's umbrella policy for UIM purposes. Id. at 5-6. In reaching this conclusion, the trial court reviewed the "Who is an Insured" language contained in Section II of the umbrella policy. Id. at 5.
 {¶ 53} This portion of the policy provides, in pertinent part:
 {¶ 54} "SECTION II — WHO IS AN INSURED
"1. If you are designated in the Declarations as:
"* * *
"a. An individual, you and your spouse are insureds, but only with respect to the conduct of business of which you are
the sole owner.
"* * *
"d. An organization other than a partnership, joint venture, or
limited liability company, you are an insured * * *."
 {¶ 55} The trial court concluded as follows in its judgment entry:
 {¶ 56} "Under the foregoing definition of insured, Lonnie Milliken, as an employee of Suarez Corporation Industries, qualifies as a `you', and, therefore, is an insured under the excess umbrella policy. He is also entitled to coverage provided by operation of law. As there is no language encompassing the relatives of Lonnie Milliken, specifically in this case, his step-father, the Estate of Richard Miller does not qualify as an insured." Judgment Entry, June 6, 2002, at 5-6.
 {¶ 57} Appellants maintain the trial court erred when it relied on the above language because this language defines "Who is an Insured" for liability purposes only and said language should not be used when coverage arises by operation of law. In support of this argument, appellants refer to our decision in Burkhart v. CNA Ins. Co., Stark App. No. 2001CA00265, 2002-Ohio-903. In Burkhart, we held:
 {¶ 58} "The Continental umbrella policy at issue herein provides excess liability coverage over and above the coverage provided by the commercial general liability policy and business auto policy. Having found supra Kelly Burkhart is an insured under the primary policies, we find Kelly would also be an insured under the umbrella policy which provides excess coverage, in the event Kelly exhausts the UIM coverage available under the primary policies." Id. at 3.
 {¶ 59} Appellants also argue that in the event we determine the liability language of Cincinnati's umbrella policy should be used to determine whether the decedent qualifies for UIM coverage under the umbrella policy, appellants refer us to the "Who is an Insured" language contained in Section II of the umbrella policy. Paragraph 2(f) of Section II provides as follows:
 {¶ 60} "SECTION II — WHO IS AN INSURED
"* * *
"2. Each of the following is also an insured:
"* * *
"f. At your option and subject to the terms of the coverage
of this insurance, any additional insureds covered in the
`underlying insurance' listed in the Schedule of Underlying
Policies, but only to the extent that insurance is
provided for such additional insureds there under."
 {¶ 61} Thus, this provision provides that any individual who is an insured under the underlying insurance listed in the umbrella's declaration page is also an insured under Cincinnati's commercial umbrella liability policy. Therefore, appellants conclude that even if the decedent and his estate do not qualify as insureds under the liability language of the umbrella policy, they do qualify as insureds under Section II, paragraph 2(f) of the umbrella policy.
 {¶ 62} Cincinnati responds that there can be no coverage under the umbrella policy in the absence of entitlement to and exhaustion of coverage under the underlying primary policy. Cincinnati also maintains the decedent is not an insured under its umbrella policy because it does not contain the necessary family member language encompassing the relatives of Lonnie Milliken as insureds. Finally, Cincinnati argues appellants should not be permitted to raise, for the first time on appeal, that the decedent and his estate qualify as insureds under Section II, paragraph 2(f) of Cincinnati's umbrella policy.
 {¶ 63} We conclude the trial court properly found the decedent and his estate do not qualify as insureds under Cincinnati's umbrella policy. Although appellants rely upon our decision, in Burkhart, we find it inapplicable to the case sub judice. A close reading of Burkhart indicates, due to the special nature and purpose of an umbrella policy, Kelly Burkhart was an insured under an umbrella policy issued to her father's employer because she qualified as an insured under the primary policies. However, in the matter currently under consideration, because the decedent is not an insured under the underlying business auto policy, we conclude neither the decedent nor his estate qualify as insureds under the umbrella policy.
 {¶ 64} We also agree with the trial court's conclusion that absent any language encompassing the relatives of Lonnie Milliken, neither the decedent nor his estate qualify as insureds under Cincinnati's umbrella policy. We recently reached this same conclusion in Jordan v. TravelersProp. Cas. Ins. Co., Stark App. No. 2002CA00248, 2003-Ohio-1309. Finally, because the decedent and his estate do not qualify as insureds under the underlying business auto policy, Section II of the umbrella policy, paragraph 2(f) also does not provide coverage.
 {¶ 65} Appellants' Second Assignment of Error is overruled.
"Cincinnati's Cross-Assignments of Error"
 I {¶ 66} In its First Cross-Assignment of Error, Cincinnati maintains that in the event we determine that the other-owned auto exclusion contained in its business auto policy does not apply to preclude coverage, the decision of the trial court should nonetheless be affirmed on the basis that the trial court erred when it determined that the December 5, 1999 UM endorsement was not effective.
 {¶ 67} Having found the other-owned auto exclusion applicable, we find Cincinnati's First Cross-Assignment of Error moot.
 II {¶ 68} Cincinnati maintains, in its Second Assignment of Error on Cross-Appeal, the trial court erred in determining that the rejection in this case fails to satisfy the requirements of Linko, supra. Specifically, Cincinnati contends that in the event we reverse the decision of the trial court and determine the decedent is an insured under its umbrella policy, we should remand this case to the trial court for a determination of the validity of the UM rejection, based upon a consideration of extrinsic evidence as mandated by Kemper v. MichiganMillers Mut. Ins. Co., 98 Ohio St.3d 162, 2002-Ohio-7101.
 {¶ 69} We also find this cross-assignment of error moot since we concluded the decedent and his estate are not entitled to coverage under Cincinnati's umbrella policy.
"Universal's Cross-Assignments of Error"
 I {¶ 70} In its First Assignment of Error on Cross-Appeal, Universal maintains the trial court erred in sustaining Cincinnati's motion for summary judgment and in declaring that Cincinnati owes no UIM coverage.
 {¶ 71} We overrule Universal's First Assignment of Error on Cross-Appeal for the reasons stated in appellant's Second Assignment of Error.
 II {¶ 72} Universal contends, in its Second Assignment of Error on Cross-Appeal, that in the event we determine that Cincinnati owes any UM/UIM coverage under either its business auto policy or umbrella policy, the trial court erred by failing to determine the excess/pro-rata arguments presented to the trial court.
 {¶ 73} Having determined that appellants are not entitled to coverage under Cincinnati's policies, Universal's Second Assignment of Error on Cross-Appeal is moot.
 {¶ 74} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: Wise, J., Gwin, P.J., and Boggins, J., concur
[1] In Bird, we determined the word "you" must be applied consistently to all parts of the contract. Thus, if "you" means the corporation and its employees, then it is that definition of "you" that must be applied throughout the policy.